USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/10/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————
UNITED STATES OF AMERICA,

-against-

VANIA MAY BELL,

                 Defendant.
———————————————————————

19-CR-550 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Defendant Vania May Bell ("Defendant") is charged by Indictment with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 and one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 1342. (ECF No. 2.) Before the Court is Defendant's motion for a bill of particulars (the "Motion"). (ECF No. 22.)

## BACKGROUND

    The facts below are alleged by the Indictment, unless otherwise noted.

    Executive Compensation Planners, Inc. ("ECP") is a registered investment adviser and financial planning firm located in New City, New York. (*Id*. at 1.) Since on or about 1982, Hector May (Defendant's father, "May") has served as President of ECP. (*Id*.) Since on or about 1993, Defendant has been an employee of ECP, holding positions such as "Comptroller" and "Compliance Specialist." (*Id*. at 2.) In addition to serving as President of ECP, since on or about 1994, May has served as a registered representative of a broker dealer ("Broker Dealer-1"). (*Id*. at 1.) Broker Dealer-1 facilitates the buying and selling of securities for clients of its registered representatives, including May's clients. (*Id*.)

Defendant and May induced clients (the "Victims") to transfer $11,400,000 in assets to ECP, "much of which came from their securities accounts with Broker Dealer-1, under the false pretense that May was going to use the money to purchase bonds or other investments on their behalf." (*Id*. at 2.) To carry out the scheme, May advised Victims to move their money to an ECP custodial account (the "ECP Custodial Account") so that ECP, rather than Broker Dealer-1, could purchase bonds on their behalf under the guise that Victims would avoid transaction fees. (*Id*. at 2-3.) May and Defendant guided Victims through the process of withdrawing money from Broker Dealer-1 and sending the money to the ECP Custodial Account. (*Id*. at 3.) After money was in the ECP Custodial Account, May and Defendant spent it on "business expenses, personal expenses and to make payments to certain Victims in order to perpetuate the scheme and conceal the fraud." (*Id*.)

May and Defendant "created phony 'consolidated' account statements [that] purported to reflect the Victims' total portfolio balances and included the names of bonds May falsely represented that he purchased for the Victims and the amount of interest the Victims were supposedly earning on the bonds." (*Id*. at 4.) "May provided [Defendant] with [the false] bond names and false interest earnings and [Defendant] created ECP computerized account statements and had them distributed to the Victims." (*Id*.) "To keep track of the money that the co-conspirators were taking from the Victims, [Defendant] processed the Victims' payments for the purported bonds, entered them in a computerized accounting program and, through that program, kept track of how [Defendant] and May received and spent the Victims' stolen money." (*Id*.)

On August 16, 2020, Defendant filed a motion requesting that the Court order the Government to issue a bill of particulars. (ECF No. 22 at 1.) Defendant also requested that the Court order the Government to produce all *Brady* and *Giglio* material, as well as 3500 material.

(*Id*.) On September 15, 2020, the Government filed a memorandum of law in opposition to Defendant's motion. (ECF No. 23.) Defendant did not file a reply to the Government's opposition.

**STANDARD**

Federal Rule of Criminal Procedure 7(f) allows a defendant to request a bill of particulars to obtain information relevant to "the nature of the charge against him [or her]," to enable him or her "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he [or she] be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citing *Wong Tai v. United States*, 273 U.S. 77, 82 (1927)). The decision to grant a bill of particulars is within the sole province of the district court. *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).

A bill of particulars is only necessary "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). The central question is whether the "information sought is necessary, not whether it is helpful." *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990). Typically, where the information sought is "provided in the indictment or in some acceptable alternate form," such as through discovery, "no bill of particular is required." *Bortnovsky*, 820 F.2d at 574.

Demands for information "with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." *United States v. Guerrero*, 669 F. Supp. 2d 417, 426 (S.D.N.Y 2009). Nor are defendants entitled to (1) "information regarding how the Government alleges the defendant performed acts in furtherance of the conspiracy," see *Minaya*, 395 F. Supp. 2d at 36 (citing *United States v. Santiago*, 174 F. Supp. 2d 16, 35

3

(S.D.N.Y. 2001)), or (2) more specified dates on which the alleged illegal conduct occurred, *see id.* at 35 (citing *United States v. Lorenzano*, No. S6 03CR1256, 2005 WL 975980, at *3 (S.D.N.Y. Apr. 26, 2005)).

Local Criminal Rule 16.1 for the Southern District of New York provides that "[n]o motion address to a bill of particulars . . . shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement." *See United States v. Dupigny*, 2019 WL 2327697, at *2 (S.D.N.Y. May 30, 2019) (finding that a failure to comply with Local Criminal Rule 16.1 is "fatal to the motion"); *Minaya*, 395 F. Supp. 2d at 32 (finding that a failure to comply with Local Criminal Rule 16.1 "constitutes a sufficient basis on which to deny the Defendants' motions for . . . bills of particulars"); *United States v. Lopez*, 2019 WL 4733603, at *7 (S.D.N.Y. Sept. 27, 2019) (finding informal attempts to receive the requested information from the U.S. Attorney's Office insufficient because neither defendant filed the affidavit required by Local Criminal Rule 16.1).

**DISCUSSION**

    **I.**    **Defendant's Motion**

Defendant argues that the Court should compel the Government to issue a bill of particulars because the "massive discovery produced to date does not indicate [Defendant] ever had substantial sums of money in any of her account, did not live a life style that was indicative of having large sums of disposable income, nor, and most significantly, that she either advised an investor or had any knowledge of her father[']s scheme." (ECF No. 22-1 at 4.) Defendant also alleges that "no documents have been produced that indicate [Defendant] . . . ever joined a conspiracy." (*Id*.) Defendant argues that she needs to know the "criminal acts that the [G]overnment is charging if she is to be able to prepare adequately for trial and avoid unnecessary surprise." (*Id*.)

Defendant specifically requests information regarding sixteen matters: (1) the precise date Defendant joined the conspiracy, (2) the documents that reflect Defendant's salary, (3) the documents that reflect Defendant's relationship with the victims, (4) the documents that reflect Defendant's knowledge that the bond names and interest earning provided to her by May were "phony," (5) the documents that reflect Defendant's knowledge that the ECP account statements were phony, (6) the documents that reflect Defendant's communications with the victims, (7) the acts that Defendant allegedly engaged in that indicate she joined or benefited from the charged conspiracy, (8) the documents that indicate Defendant knowingly made false representations to the victims, (9) the documents that indicate Defendant's knowledge that May was committing fraudulent acts, (10) the documents that indicate any communications with other employees that would indicate Defendant's knowledge of a fraud, (11) the documents that indicate Defendant received more than a salary, (12) the documents that show Defendant made any purchases from any company account for which the company was not reimbursed, (13) the

5

documents that indicate Defendant purchased anything of value on a company account, (14) the items seized by the Government from Defendant that can be classified as an item "of value," (15) the documents that indicate a transfer of funds from the company into any and all of Defendant's banking or checking accounts, (16) the credit card statements that indicate Defendant made unauthorized purchases. (ECF No. 22-2.) In essence, Defendant requests information and documents regarding four issues: (1) Defendant's gains from the alleged scheme, (2) Defendant's role in the conspiracy, (3) Defendant's relationship with the Victims, and (4) Defendant's knowledge of the alleged scheme.

## II. Government's Response

The Government opposes Defendant's motion and argues that "through the Indictment, discovery and additional information provided to [Defendant], she has more than sufficient information about the nature of the charges against her to allow her to prepare for trial, avoid unfair surprise and preclude a second prosecution for the same offense." (ECF No. 23 at 4.)

As to Defendant's concerns regarding evidence of Defendant's gains from the alleged scheme, the Government notes that it is not required to demonstrate that Defendant obtained "substantial sums of money" from the scheme or that she lived a lifestyle "indicative of having large sums of disposable income." (ECF No. 23 at 10, n.5; ECF No. 22 at 5.) "The Government does not have to prove whether and how much the defendant received in ill-gotten gains as any element of the charged offense." (ECF No. 23 at 10, n.5.) Further, the Government indicates that the discovery reflects that the alleged scheme permitted Defendant to continue to operate ECP for over two decades and receive a "salary, workplace benefits, and a stable job with her father." (*Id*.)

As to Defendant's role in and knowledge of the alleged scheme, the Government notes that Defendant served as Comptroller at ECP and "had the responsibility of keeping track of all

6

money that into and left ECP, including the money that came from the Victims." (ECF No. 23 at 10.) "[Defendant] processed Victims' payments for what were represented to be purchases of bonds, entered those payments into a computerized accounting program and, through that program, kept track of how [Defendant] and May received and spent the Victims' stolen money." (*Id*.) Defendant routed Victims' money into the ECP Custodial Account instead of using it to purchase bonds and spent it on "ECP business expenses, personal expenses and to make payments to certain Victims in order to perpetuate the scheme and conceal the fraud." (*Id*.)

The Government further notes that "discovery material provides the nitty-gritty mechanics of the steps each of the two co-conspirators took to execute the fraud together, the identities of the Victims, and when and by how much the Victims were defrauded. It includes ECP's computerized accounting records, bank records, emails, texts and other documents, some of which [Defendant] created, signed, or administered, that relate to the flow of the [Victims'] stolen money, and reflect [Defendant's] knowledge of the fraud." (*Id*. at 11.) The Government points out that the QuickBooks electronic accounting records reflect, among other things, Defendant's "running tally of the amounts of money stolen from each Victim." (*Id*.) The Government also notes that email communications between Defendant and the Victims whereby Defendant instructed Victims how to transfer assets to ECP, show Defendant's involvement in the alleged scheme. (*Id*.) Further, the "Government also turned over bank statements, deposit slips, and checks, which document the deposit of Victim's money into the ECP Custodial Account, the transfer of that money to an ECP operating account, and the use of that money not to purchase bonds, but instead to pay for May's and [Defendant's] personal and business expenses. Many of these items contain [Defendant's] initials and instructions to ECP employees." (*Id*. at 12.) The discovery materials also include correspondence in which "May

instructed Victims to call [Defendant] if they had any questions about their bond purchase" and Defendant "directed Victims on how to transfer their money to ECP for bond purchases." (*Id*.) Yet, the Government alleges that in "other communications, [Defendant] instructed employees in connection with the creation of phony 'consolidated' account statements." (*Id*. at 13.) The Government alleges that phony account statements, templates, and markups were found on Defendant's computer. (*Id*.) Finally, the Government indicates that it will call "numerous witnesses, including Victims and ECP employees, who, among other things, will provide further details relating [Defendant's] role and activities at ECP and her relationships and interactions with her father, ECP employees and Victims." (*Id*.)

As indicated above, Defendant did not respond to the Government's opposition and therefore did not challenge any of the assertions made by the Government regarding discovery materials.

### III.   A Bill of Particulars is Not Warranted

Defendant seeks information and documents demonstrating her earnings from the alleged scheme. The Government argues—and Defendant does not oppose—that Defendant's ill-gotten gains are not an element of the offenses charged. Because the request is not relevant to the offense, it does not enable Defendant to understand "the nature of the charge against [her] . . . to prepare for trial, to prevent surprise, [or] to interpose a plea of double jeopardy should he [or she] be prosecuted a second time for the same offense." *Bortnovsky*, 820 F.2d at 574 (citing *Wong Tai*, 273 U.S. at 82). As such, the Defendant's request for information that seeks to uncover Defendant's ill-gotten gains is denied.

Defendant further seeks information regarding her status in the conspiracy, including the date she joined the conspiracy and the acts that she allegedly engaged in that indicate she joined or benefited from the conspiracy. However, courts in this district routinely deny requests seeking

to ascertain when a conspiracy allegedly began, *Guerrero*, 669 F. Supp. 2d at 426; *United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001). Further, the Government clearly stated the acts Defendant engaged in that indicate she joined the conspiracy in its opposition brief. These include, among other things, instructing Victims as to how to transfer assets to ECP and creating false account statements. "[T]he principal function of a bill of particulars is to apprise a defendant of the essential facts of the crime for which [she] has been indicted, especially in instances where the indictment itself does little more than track the language of the statute allegedly violated." *United States v. Salazar*, 485 F.2d 1272, 1278 (2d Cir. 1973). Here, the Government's summary of the facts demonstrated by the discovery materials clearly meets this burden. As such there is no need for a bill of particulars to ascertain this information.

     Defendant also seeks documents that reflect her relationship with the Victims and reflect her communications with the Victims. Although the Government did not precisely identify such documents, in its opposition, the Government again describes the existence of such documents in the discovery material. Again, this description of the discovery materials apprises Defendant of the essential facts of the alleged crime and Defendant "may not use a bill of particulars as a generative investigative tool." *United States v. Sindone*, 2002 WL 48604, *1 (S.D.N.Y. Jan. 14, 2002).

     Finally, Defendant requests documents that demonstrate her awareness of the alleged scheme. Again, there is sufficient information in the Indictment and in the Government's opposition for Defendant to understand the nature of the charges against her. In its opposition the Government specifically points to Defendant's Quickbooks records which demonstrate that Defendant kept a running tally of the amount of money stolen from the Victims. Further, the Government points to Defendant's communications with Victims in which she assisted them in

transferring their assets to ECP. Finally, the Government points to Defendant's creation of phony statements which indicated Victims' money was invested in bonds, when in reality Defendant and May spent the money on other purchases or by redistributing it to other Victims to conceal the alleged scheme.

Pursuant to the above analysis, Defendant's motion for a bill of particulars is denied in its entirety. The Indictment clearly details the allegations against Defendant. Further, the Government's brief provides additional descriptions of the evidence it seeks to use to prove its case against Defendant. Both the Indictment and the Government's opposition provide sufficient information such that Defendant is aware of "the nature of the charge against him [or her]" and is able to "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he [or she] be prosecuted a second time for the same offense." *Bortnovsky*, 820 at 574 (citing *Wong Tai*, 273 U.S. at 82 ).[1] The essential facts of the crime for which Defendant was indicted are clear and the Indictment and subsequent briefing provides far more information than the language of the statute Defendant is alleged to have violated. *See Salazar*, 485 at 1278.

### IV. Defendant's Other Requests

Defendant requests that the Court order the Government to turn over any *Brady* or *Giglio* material. (ECF No. 22 at 1.) The Government did not oppose this request. The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilty or to punishment" and that is known to the Government. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The Government shall disclose such information to the defense promptly after its

---

[1] Defendant's motion is also properly denied pursuant to Local Criminal Rule 16.1 for the Southern District of New York, which provides that "[n]o motion address to a bill of particulars . . . shall be heard unless counsel for the moving party files in or simultaneously with the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the Court and has been unable to reach agreement." Defendant did not file such an affidavit in or simultaneously with her moving papers.

existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case. As part of these obligations, the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. The Court directs to produce all *Brady* and *Giglio* material forthwith. This obligation is continuing and applies to materials that become known to the Government at a later date.

Defendant additionally requests an early production of 3500 material. (ECF No. 22 at 1.) The Government did not oppose this request. Title 18 U.S.C. Section 3500 provides that, "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of a subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case. . . . After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States. . ." 18 U.S.C. § 3500. Unless disclosure of Section 3500 material is otherwise required by *Giglio* or *Brady*, the Court is without authority to order "pretrial disclosure of witness statements." *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) (3500 not "the subject of discovery until th[e] witness has testified on direct examination"). As such, the motion for early production of 3500 material is premature and is denied, without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a bill of particulars is DENIED; Defendant's motion for production of *Brady* and *Giglio* material is GRANTED; Defendant's

motion for early production of 3500 material is DENIED, without prejudice. The Clerk of the Court is kindly directed to terminate the pending motions at ECF No. 22.

Dated:   December 10, 2020                                          SO ORDERED:

         White Plains, New York

                                                                    _____

                                                                    NELSON S. ROMÁN

                                                                    United States District Judge